UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALEXANDER LEO BROWN,

    Plaintiff,

v.                                    Case No. 3:22cv7534-TKW-HTC

E. HERNANDEZ-PEREZ,
MICHAEL R. COLLINS,
LUIS RODRIGUEZ,

    Defendants.
_____/

ORDER and
REPORT AND RECOMMENDATION

Plaintiff Alexander Leo Brown, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this action in the Circuit Court for Santa Rosa County.[1] The only served Defendant, Michael R. Collins, removed the matter to this Court. The Court has screened the complaint under 28 U.S.C. § 1915(e)(2)(B) and finds the complaint fails to state a claim against any of the Defendants. Because Plaintiff is proceeding *pro se,* rather than recommend the matter be dismissed, the Court will give him an

---

[1] The Court notes that Plaintiff has filed at least three actions while a prisoner which count as a strike under § 1915(g), and which would have precluded him from proceeding *in forma pauperis* in this Court absent a showing of imminent danger, had the matter been brought in federal court. *See* 28 U.S.C. § 1915(g); *Maldonado v. Baker Cnty. Sheriff's Office*, 23 F.4th 1299 (11th Cir. 2022) (holding that three strikes provision of PLRA does not apply to removed actions and dismissal is not appropriate).

opportunity to amend his complaint.² If after reading this Order, Plaintiff does not feel that he can more carefully craft his complaint to state a claim against these Defendants, then he should file a notice of voluntary dismissal.

Also, the Court notes that Collins has filed a motion to dismiss for failure to state a claim as well as for failure to exhaust, which motion is still pending. ECF Doc. 7. This Order *does not* alter Plaintiff's obligation to file a response to the motion to dismiss.³ Also, because Collins has moved to dismiss on exhaustion grounds, even if Plaintiff is able to amend his allegations against Collins to state a claim, the claim could nonetheless be subject to dismissal for failure to exhaust.

As part of this Order, the undersigned also recommends Plaintiff's request for temporary injunctive relief be denied because he has not shown a substantial likelihood of success on his claims *and* none of the Defendants named are at Plaintiff's current facility, making injunctive relief improper.

## I.   BACKGROUND

Brown initiated this action by filing a complaint against three Defendants: Doctor Hernandez-Perez, Nurse Michael Collins (who Brown incorrectly identified in the complaint as a doctor), and Doctor Luis Rodriguez, alleging Eighth

---

² Plaintiff previously filed a motion to amend; however, that motion was denied because it was not accompanied by the proposed amended complaint, appeared to seek to add a new defendant, and did not address the issues raised in Collins' motion to dismiss, including exhaustion. ECF Doc. 10.
³ Plaintiff's response is due on or before July 15, 2022. ECF Doc. 8.

Amendment claims under 42 U.S.C. § 1983 and a state tort of negligence, for failing to adequately treat him for an ankle injury. ECF Doc. 5. The complaint contains the following allegations, which the Court will accept as true for purposes of this report and recommendation.

On August 2, 2020, Plaintiff "was involved in a fight with a prisoner" and his "right ankle was injured causing great pain and swelling." ECF Doc. 5 at 2. "Plaintiff could not walk normally or apply weight on it to stand." *Id*. On August 13, 2020, "Plaintiff submitted an inmate sick call request" and on August 31, 2020, Plaintiff was examined by Nurse Coedby who provided Ibuprofens and stated Plaintiff would have to submit another sick call request to see a physician. *Id*.

Plaintiff submitted another sick call request for "ongoing pain and difficulty in walking" and "on September 16, 2020, Plaintiff was seen by Nurse Bennett." ECF Doc. 5 at 2. "[S]he looked at [Plaintiff's] ankle, . . . provided more Ibuprofens" and referred Plaintiff to a physician. *Id*. On September 23, 2022, Plaintiff was seen by Practitioner Paulk, and "Plaintiff explained his condition of not being able to walk normally or apply weight on it to stand." *Id*. Practitioner Paulk stated Plaintiff had a "muscle strain" and ordered Naproxen 500mg and an ace bandage. *Id*.

Plaintiff submitted another sick call request, and on November 18, 2020, Plaintiff was seen by Nurse Cooper who looked at the ankle and provided Ibuprofens. *Id*. On November 29, 2020, Plaintiff sent another sick call request

explaining the "repeated complaints" about his ankle pain and that the "medication ordered by the practitioner was not issued," and of his continued difficulty walking and standing. ECF Doc. 5 at 3. Thereafter, Plaintiff was seen by Nurse McKay on December 6, 2020, who looked at Plaintiff's ankle and gave Plaintiff Ibuprofens. *Id*.

On December 20, 2020, Plaintiff "sent another sick call" about his pain and "that the Ibuprofens were not helping to alleviate the pain walking or standing." *Id*. On December 28, "Plaintiff was seen by Nurse Kirksey" who "gave Plaintiff more Ibuprofens and sent him back to his cell." *Id*. On January 4, 2021, Plaintiff "was seen by [Defendant] Doctor Hernandez-Perez." *Id*. "Plaintiff explained to Doctor Hernandez-Perez that it was painful for him to walk and stand on the right ankle," and Hernandez-Perez responded that it "didn't look like anything was wrong the way he was walking." ECF Doc. 5 at 3. Plaintiff stated he would "write [Doctor Hernandez-Perez] up for refusing to treat him." *Id*. Doctor Hernandez-Perez "ordered prison staff to remove Plaintiff from the triage" and "no treatment was provided." *Id*.

On January 23, 2021, Plaintiff was transferred to Santa Rosa Correctional Institution ("Santa Rosa CI"). *Id*. On February 2, 2021, "Plaintiff sent a sick call request explaining his condition" and on February 5, 2020, "Plaintiff was seen by Nurse Ceray" who "looked at [Plaintiff's] ankle and gave Plaintiff Ibuprofens. *Id*. On February 26, 2021, "Plaintiff sent another sick call," and on March 3, 2021,

Case No. 3:22cv7534-TKW-HTC

"Plaintiff was seen by Nurse Ceray" who gave Plaintiff Ibuprofens and referred Plaintiff to Doctor Rodriguez. ECF Doc. 5 at 3.

"On March 5, 2021, Plaintiff was seen by Dr. Rodriguez." *Id*. "Plaintiff explained his long suffering and condition of his right ankle." *Id*. Doctor Rodriguez "ordered x-rays, medication for inflammation, a no prolong standing and wheelchair pass, and a follow up." *Id*.

On March 17, 2021, Plaintiff took x-rays which showed Plaintiff had "no fractures, gross lytic or blastic lesions in the bones." ECF Doc. 5 at 3. Plaintiff "continued to experience ongoing pain and difficulty walking and standing." *Id*. On April 14, 2021, Plaintiff sent another sick call "complaining about the pain and the need for a [magnetic resonance imaging ("MRI")] and pain medication." *Id*. On April 17, 2021, "Plaintiff was seen by Nurse Neely" who "gave Plaintiff more Ibuprofens." ECF Doc. 5 at 4. On May 4, 2021, "Plaintiff submitted another sick call about the prolonged pain and suffering" and, on May 8, 2021, "Plaintiff was seen by Nurse Neely who gave Plaintiff more Ibuprofens and referred him back to Doctor Rodriguez." *Id*.

On May 12, 2021, "Plaintiff was seen again by Doctor Rodriguez" and "Plaintiff told Rodriguez that the ankle pain was still ongoing and the Ibuprofens were not helping the pain." *Id*. "Plaintiff requested to have an MRI . . . because it would show injuries the x-rays could not, or to refer him to be examined by a

qualified orthopedic specialist." *Id*. "Instead Rodriguez ordered blood be taken and Naproxen 500mg." On May 21, the blood results indicated normal results. *Id*.

On June 26, 2021, Plaintiff was transferred to Florida State Prison ("FSP"). ECF Doc. 5 at 4. On October 17, 2021, "Plaintiff submitted a sick call complaining about his condition and ongoing pain." *Id*. "On October 21st, Plaintiff was seen by Nurse Jane Doe who told Plaintiff that [Defendant Nurse Collins] stated he wasn't going to see Plaintiff because his medical file shows nothing is wrong with the ankle." *Id*.

Plaintiff "has filed repeated grievances requesting medical care for his right ankle to no avail." *Id*. "On information and belief, when a prisoner submits a grievance, the grievance staff call the matter to the attention of those individuals responsible for the matter that the grievance concerns." *Id*. "Defendant Hernandez-Perez is responsible for and is in charge of approving inmates with serious medical conditions for medical treatment outside the prison when a prisoner needs specialized evaluation or treatment." ECF Doc. 5 at 4. "Plaintiff is currently experiencing ongoing pain in the right ankle when walking and limp because of the pain." *Id*. "Plaintiff cannot walk normally and his ankle does not have the full range of motion before it was injured." *Id*. Plaintiff is suffering irreparable harm in the form of continued physical and mental pain and suffering and a risk that his right ankle will never be restored to its full usefulness." *Id*.

## II. FAILURE TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court is required to review his complaint and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  In reviewing Plaintiff's complaint, the Court must read Plaintiff's allegations in a liberal fashion.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and conclusory allegations are not entitled to a presumption of truth. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009).

As stated above, the crux of Plaintiff's claim against Defendants is that they refused to see him, refused to provide him with an MRI, or refused to refer him to an outside specialist.  A prison official violates the Eighth Amendment when the official acts with deliberate indifference to an inmate's serious medical needs, giving rise to a cause of action under § 1983.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  However, the Supreme Court has emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105; *Mandel v. Doe,* 888 F.2d 783, 787

(11th Cir. 1989). Rather, medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Mere incidents of negligence or even malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (noting that mere negligence or medical malpractice is "not sufficient" to constitute deliberate indifference); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that mere medical malpractice does not constitute deliberate indifference). To succeed on a claim of deliberate indifference to a medical need under the Eighth Amendment, Plaintiff must show (1) a serious medical need; (2) Defendants' deliberate indifference to that need; and (3) causation between that indifference and Plaintiff's injury. *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 940 (11th Cir. 2017). Plaintiff's allegations, however, do not establish either of the first two elements.[4]

A "serious medical need is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for

---

[4] Defendant Collins raises similar arguments in his motion to dismiss for failure to state a claim and failure to exhaust, which is pending before the Court. ECF Doc. 7.

Case No. 3:22cv7534-TKW-HTC

medical treatment." *See Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). Here, although Plaintiff contends he suffers from debilitating ankle pain, he has not been diagnosed with anything more than a possible strain. Indeed, Plaintiff alleges he was told by Dr. Rodriguez that the x-rays showed no fracture. An ankle sprain, however, does not rise to the level of a serious medical need. *See e.g., Dotson v. Correctional Med. Srvc.,* 584 F. Supp. 2d 1063, 1068 (W.D. Tenn. 2018) (finding lack of evidence showing a serious medical need despite plaintiff's allegations he could not walk, where records showed plaintiff's injury was likely an ankle sprain). Regardless, even if Plaintiff could meet the first element of a deliberate indifference claim, he cannot meet the second.

To meet the second element, which is more subjective, Plaintiff must sufficiently allege: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). Establishing deliberate indifference requires Plaintiff to show "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). In other words, Defendants' response to Plaintiff's serious medical need must be "poor enough to constitute an unnecessary and wanton infliction of pain,

and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice." *Id.* at 1258 (citing *Estelle*, 429 U.S. at 105–06).

Based on Plaintiff's allegations he received Ibuprofen, Naproxen, blood work, an x-ray, a wheelchair, and referral to a physician for his ankle pain. There are no allegations any of the Defendants refused him additional treatment to punish or cause him harm. To the contrary, the allegations show these Defendants treated Plaintiff or determined no additional treatment was necessary based on their medical observations and review of the objective medical records, such as x-rays.

For example, Dr. Hernandez-Perez found additional treatment unnecessary because it did not appear to the doctor that there was anything wrong with the way Plaintiff was walking. ECF Doc. 5 at 3. Similarly, Plaintiff admits Dr. Rodriguez saw him on March 5, 2021, and ordered x-rays, medication for inflammation, and gave him a no prolonged standing and wheelchair pass. *Id.* He also recommended a follow-up visit. *Id.* However, on March 17, 2021, the x-rays showed "no factures, gross-lytic, or blastic lesions in the bones." *Id.* at 4. Nonetheless, Plaintiff was referred to Dr. Rodriguez again on May 12 after making a sick call request, and at that time asked for an MRI. *Id.* Although Dr. Rodriguez did not agree an MRI was necessary, he ordered blood work and prescribed additional medication. *Id.* The blood work was also normal. *Id.* Plaintiff's allegations against Collins are even more obscure. As to Collins, he alleges he was told by a Jane Doe Nurse that Collins,

who Plaintiff alleges is a doctor, refused to see him. However, Plaintiff also admits that he was told Collins did not want to see him "because his medical file shows nothing wrong with the ankle." *Id.* These allegations are a far cry from establishing deliberate indifference; instead, they show these Defendants acted reasonably in response to Plaintiff's alleged injury.

Although Plaintiff believes he should have also been given an MRI and referred to an outside specialist, a dispute over treatment does not rise to a constitutional violation. Instead, "[w]hen an inmate has, in fact, received medical treatment, there will be a violation of the Eighth Amendment, only when the treatment was 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *See, e.g.*, *Criner v. Hernandez*, 562 F. App'x 930, 932 (11th Cir. 2014) ("[E]vidence of potential error in the medical judgment of [the medical defendants] does not create a genuine issue of material fact because it does not demonstrate action or inaction beyond gross negligence.").

Moreover, "when a prisoner receives medical attention, courts do not second guess the judgment of medical professionals." *Denton v. Transcor America, Inc.,* 1999 WL 33603122, at *3 (W.D. Ky. Jan. 15, 1999) (citing *Estelle v. Gamble,* 429 U.S. at 107); *Harris*, 941 F.2d at 1507. As the Eleventh Circuit has stated, "we disavow any attempt to second-guess the propriety or adequacy of a particular course

of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment." *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). "The judgment of medical professionals regarding the type of care to be provided and which diagnostic tools to use, such as x-rays and MRIs, are to be challenged in a state law medical malpractice action and not under the Eighth Amendment."[5] *Dotson,* 584 F. Supp. 2d at 1068.

Indeed, several courts have found similar disputes over treatment were insufficient to state an Eighth Amendment claim. *See Kiley v. Andam*, No. 5:06CV86 RS, 2006 WL 3667233, at *5 (N.D. Fla. Dec. 12, 2006) (noting a doctor's decision to forgo referring a prisoner to a specialist does not violate the Eighth Amendment); *Palermo v. Corr. Med. Servs. Inc.*, 133 F. Supp. 2d 1348, 1361 (S.D. Fla. 2001) (holding decision not to refer inmate suffering from back complications to a specialist did not violate the Eighth Amendment).

Plaintiff, therefore, has not stated a claim against Collins, Hernandez-Perez or Rodriguez under the Eighth Amendment. *If* Plaintiff wants to proceed on this claim

---

[5] Although Plaintiff has also asserted a state law negligence claim against Defendants, the Court need not address the merits of that claim because if the federal Eighth Amendment claim is dismissed, then so should the state law claim. *See Blanksteen v. N.Y. Mercantile Exch.*, 879 F. Supp. 363, 371 (S.D.N.Y. 1995) (footnote omitted) ("Even if the plaintiff could demonstrate a likelihood of success on the state law issues, which she has not, she would not have any basis for a preliminary injunction because she has failed to demonstrate a likelihood of success on her federal claim. If the federal claim is dismissed, the state law claims would be subject to dismissal under 28 U.S.C. § 1367(c)(3).").

against these Defendants he must file an amended complaint alleging facts sufficient to meet the elements set forth above. Also, because the Court finds Plaintiff's claims to be insufficiently pled, the Court will not direct service on Hernandez-Perez or Rodriguez at this time.

### III.   PRELIMINARY INJUNCTION

Along with the complaint, Plaintiff also filed a "Memorandum of Law," ECF Doc. 6, and "Affidavit in Support of Plaintiff's Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction," ECF Doc. 6-1. Plaintiff seeks for the Court to require "Defendants to arrange for an examination and plan of treatment by a qualified specialist," and require Defendants to carry out that plan of treatment. ECF Doc. 6-1 at 3. Although Plaintiff did not file a motion for TRO, the Court will nonetheless treat the memorandum and affidavit as including a motion for temporary injunctive relief.

A court may grant a preliminary injunction, "only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Granting or denying a preliminary injunction is a decision within the discretion of the district court.

*Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (citing *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983)). A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant "clearly carries the burden of persuasion" on all four (4) prerequisites. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983).

The undersigned recommends the motion be denied because, for the reasons set forth above, Plaintiff fails to show a likelihood of success on the merits. Additionally, Plaintiff has not shown that he will be irreparably harmed if injunctive relief is not granted. *See Moore v. Lassiter,* 2021 WL 2784292, at *2 (W.D.N.C. July 2, 2021) ("To the extent that Plaintiff seeks injunctive relief with respect to the medical care he is continuing to receive at his current place of incarceration, the Plaintiff has not established that he is likely to succeed on the merits of his claims of deliberate indifference; that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief; that the balance of equities tip in his favor; or that an injunction is in the public interest."). As stated above, Plaintiff's own allegations show Plaintiff received medical treatment each time Plaintiff placed a sick call request. There are no allegations Plaintiff is not being seen by medical providers at his current institution. *See Merritt v. Godfrey*, No. 3:13CV607/LAC/EMT, 2015 WL 5439306, at *9 (N.D. Fla. Aug. 10, 2015), *report and recommendation adopted*,

No. 3:13CV607/LAC/EMT, 2015 WL 5440570 (N.D. Fla. Sept. 19, 2015) (finding no irreparable injury where an inmate "may seek medical care at his present institution"). Also, although Plaintiff may believe he suffers from more than a sprained ankle, there are no allegations that he has been diagnosed with anything more. Thus, any risk of harm is purely speculative. *Milhouse v. Fasciana*, 721 F. App'x 109, 111 (3d Cir. 2018) (affirming denial of preliminary injunctive relief where claim was based on a dispute over treatment); *see Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000) (risk of irreparable harm must not be speculative); *see also Ferring Pharms., Inc. v. Watson Pharms., Inc.,* 765 F.3d 205, 210 (3d Cir. 2014) ("The failure to establish any element ... renders a preliminary injunction inappropriate.") (internal quotation marks and citations omitted).

Finally, injunctive relief is not available because none of the Defendants are at his current institution, Santa Rosa CI, and, thus, none of them can provide him with the medical care he seeks. Collins, the only served Defendant, is located at Florida State Prison. ECF Doc. 1-23. Also, according to the returns of service from the Santa Rosa County Sheriff's Office, Dr. Rodriguez and Dr. Hernandez-Perez are no longer at Santa Rosa CI. ECF Doc. 1-25, ECF Doc. 1-32. In other words, although Plaintiff states he seeks injunctive relief against Defendants, it is clear he seeks to have officials at Santa Rosa CI provide him with certain medical care. None of those officials, however, are before the Court. "It would be inappropriate to grant

Plaintiff injunctive relief against non-party officers who would have had no opportunity to be heard on Plaintiff's claims and allegations." *Brown*, No. 2016 WL 6803133, *2; *see Bethel v. Escambia Cnty., FL*, 2006 WL 3780716, at *3 (N.D. Fla. Dec. 20, 2006) ("The persons from whom injunctive relief is sought must be parties to the underlying action.").

Accordingly, it is ORDERED:

1. The clerk shall send a section 1983 complaint form for use by prisoners to Plaintiff. This case number shall be written on the form, and "Amended Complaint" shall be typed on the complaint form.

2. Within **twenty-one (21) days** from the date of this order, Plaintiff shall file an amended complaint, compliant with the instructions set forth herein, and which shall be typed or clearly written and submitted on the provided form. Alternatively, he may file a notice of voluntary dismissal in the same time to avoid a strike under the PLRA.

3. Plaintiff shall update the Court of any changes to his address within seven (7) days of the change and failure to do so may result in a recommendation of dismissal.

4. Failure to comply with this order as instructed may result in a recommendation that this case be dismissed for failure to prosecute or failure to comply with an order of the Court.

It is further respectfully RECOMMENDED:

1.  That Plaintiff's "Memorandum of Law," docketed as a Motion For Temporary Restraining Order, ECF Doc. 6, be DENIED.

2.  That this matter be referred back to the magistrate judge for further proceedings.

At Pensacola, Florida, this 29th day of June, 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.